IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DELORES BANKS, As Administrator of the ESTATE OF RANDALL DENEEN BANKS, Deceased and as REPRESENTATIVE OF THE NEXT OF KIN, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 19-cv-85-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Delores Banks, the Administrator of the Estate of Randall Deneen Banks, Deceased, filed the instant lawsuit asserting survival and wrongful death claims against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"). She alleges that Veterans Administration medical providers failed to timely diagnose Banks' bladder cancer and that the delayed diagnosis resulted in the need for a total bladder removal in lieu of lesser invasive procedures, ultimately resulting in his death due to surgical complications. Now pending before the Court is Plaintiff's Motion for Partial Summary Judgment on Liability (Doc. 49) which the United States opposes (Doc. 56). For the following reasons, the Motion is **DENIED**.

### Factual Background

Randall Daneen Banks began receiving medical care from providers at the Marion VA in 2000 (Doc. 36, ¶ 4). On December 3, 2013, he presented to VA urologist Dr. Adiraju Palagiri following a referral from a VA general surgeon (Doc. 46-2, pp. 4-9; Doc. 46-8, p. 21). The referral

was requested following a radiological report which characterized Banks' bilateral renal masses as complex, non-echoic and echoic and indicated that they could be benign or malignant; Banks also had an angiomyolipoma (Doc. 46-2, pp. 4-9; Doc. 46-8, p. 21). During the December 3, 2013 office visit, Dr. Palagiri reviewed and discussed an ultrasound and CT scan of Banks' kidneys (Doc. 46-2, pp. 4-9).

Banks had a follow-up visit with Dr. Palagiri on January 14, 2014 to review the results of a CT scan of Banks' abdomen (Doc. 46-7, pp. 64-70; Doc 46-1, pp. 123-124). The CT scan revealed an unchanged AML and cystic lesions and a new, incidental finding of an abdominal aortic aneurysm. *Id.* Dr. Palagiri directed Banks to return in July 2014 for a follow-up visit and renal ultrasound which would be taken to monitor his kidney lesions (Doc. 46-7, pp. 64-70).

On January 15, 2014, Banks presented to the ER and reported that he had passed blood in his urine and had burning with urination earlier that morning and had passed darker urine following a CT scan with dye the day before (Doc. 46-7 at 53-61). ER staff treated Banks for a urinary tract infection ("UTI"). *Id*. The plan of care indicated that Banks should call Urology for an appointment if the blood in his urine continued. *Id*.

On June 16, 2014, Banks went to the ER a second time complaining of blood in the urine, burning, frequency, urgency, and slow stream (Doc. 46-1, pp. 119-121; Doc. 46-7, pp. 21-29). Although his urinalysis and urine culture results were negative for an infection, he was treated for a presumptive UTI. *Id*. Banks signed a discharge form indicating that he should follow up with his clinic if there was no improvement or if he had questions or concerns (Doc. 46-12, p. 121).

On July 2, 2014, Banks returned to the ER with complaints of difficulty and pain with urination, urgency, and urination in only small amounts frequently (Doc. 46-7, pp. 7-19).

Following urinalysis, a microbiology report indicated that the urine specimen grew over 100,000 mixed organisms and suggested resubmission (Doc. 46-3, p. 22).

Banks made a fourth visit to the ER on July 7, 2014 with worsening pain and hematuria which was suspected as a continuation of the UTI diagnosed on July 2, 2014 (Doc. 46-6, pp. 121-125, Doc. 46-7, pp. 1-7). The resulting urinalysis from July 7, 2014 specimen grew over 100,000 mixed organisms and the microbiology report again suggested resubmission (Doc. 46-3, p. 21). Banks signed discharge instructions advising him to keep his scheduled urologist appointment and follow-up with his clinic to recheck as needed (Doc. 46-12, p. 119).

Banks did not report for his urology appointment on July 31, 2014 and rescheduled it for August 13, 2014 (Doc. 46-6, p. 119; Doc. 46-1, p. 4). He failed to appear for the appointment on August 13, 2014. *Id.* The appointment was rescheduled for September 30, 2014 and Banks cancelled it (Doc. 46-1, p. 4). Banks failed to keep a September 24, 2014 appointment with his VA PCP Dr. Robert Tiffin (Doc. 46-6, pp. 118-119).

Banks presented to Dr. Palagiri on November 4, 2014 for a follow-up visit (Doc. 46-6, pp. 112-117). Dr. Palagiri's intake nurse charted that Banks had prior hematuria episodes and complained of significant slowing of the urinary stream with a feeling of incomplete emptying of the bladder and nocturia about three to four times per night (Doc. 46-6, pp. 112-117). Dr. Palagiri did not chart Banks' past hematuria. *Id.* Nor did Dr. Palagiri order a cystoscopy – an examination of the bladder and urethra with a scope passed through the urethra into the bladder (Doc. 46-5, p. 74). Dr. Palagiri referred Banks to the John Cochran VA hospital for a second opinion and entered an order for a consultation which stated:

> REASON FOR CONSULT:
> Pt. has multiple cystic lesions in both kidneys. CT scan with contrast did not reveal any definite enhancing lesions. Pt. also has angiomyolipoma. However, ultrasound

>study readings suggest complex echogenic lesions.  I request second opinion on this
>pt. with regard follow up and any interventions indicated.  Thanks.

(Doc. 46-1 at 118-119).

Banks was scheduled for a urology consult at John Cochran VA on November 24, 2014 (Doc. 46-1, pp. 118-119) but cancelled the appointment.  The appointment was rescheduled for December 1, 2014 however, Banks was a no-show (Doc. 46-1, pp. 118-119).  Due to two instances of failing to keep an appointment, the VA canceled the consultation which included authorization for two visits with the urology clinic (Doc. 46-1, p. 119).

On January 20, 2015, Banks went to the ER complaining of gross hematuria and discomfort during urination and was prescribed Macrobid (Doc. 46-3, pp. 21, 82-92).  The resulting microbiology report was negative for signs of infection.  *Id*.  The ER staff sent a note to Dr. Tiffin indicating that Banks may need a urology consult and Dr. Tiffin acknowledged receipt of the communication (Doc. 46-3, pp. 82-92).  The discharge instructions advised Banks to follow up with his clinic in 7 to 10 days if the symptoms persisted and to contact his clinic with any concerns (Doc. 46-12, p. 101).

Banks had a routine six-month checkup with Dr. Tiffin on June 23, 2015 (Doc. 46-6, pp. 43-51).  He denied urinary symptoms and declined a preventive screening for colon cancer.  *Id*.  Dr. Tiffin did not order a urinalysis or refer Banks to urology.  *Id.*

On August 26, 2015, Banks presented to the ER with dysuria and hematuria for the 8th time over a 19-month period.  Dr. Mark Kalna ordered a urinalysis and lab work (Doc 46-6, pp. 9-15).  The urinalysis and a lab work showed evidence of hematuria and the absence of infection.  *Id*.  Dr. Kalna documented that Banks had not yet had a cystoscopy and noted that it had been recommended that Banks go to John Cochran for a urology consultation.  *Id*.  Banks reported that

he had not been able to get transportation to St. Louis. *Id*. Dr. Kalna treated Banks for a UTI with antibiotics and sent the following electronic note to Dr. Palagiri:

> Chief Complaint/BPI: Hematuria/ the patient states he developed hematuria early this morning. He states he has had dysuria. He denies abdominal pain, nausea and vomiting. He denies abdominal pain. He states he has hematuria every several months and has been seen by urology in the past and diagnosed with angiomyolipoma as well as renal cysts. It was recommended that he follow up at JC for a second opinion although he states he has not been able to obtain transportation to St. Louis. He has had multiple imaging studies at Marion VA. He denies fever and chills. He states he has had UTis in the past.

Banks signed written instructions advising him to contact urology and his clinic. (Doc 46-12 at 92).

On April 19, 2016, Banks presented to the ER with complaints of hematuria and dysuria (Doc. 46-5, pp. 71-90). He saw Dr. Palagiri the following day. *Id*. Dr. Palagiri wanted to do a CT urogram and a cystoscopy to investigate Banks' hematuria but was unable to do the urogram due to Banks' elevated creatinine levels (Doc. 46-5, p. 72). He performed a cystoscopy on April 25, 2016 and observed a bladder tumor which was later discovered to be malignant (Doc. 49-1, p. 15).

On May 5, 2016, Dr. Lawrence Hatchett, a private urologist, performed trans urethral resection of bladder tumor (TURBT) on Banks (Doc. 49-4). Final pathology after review at the VA showed high-grade transitional cell carcinoma with invasion into the muscularis propria (Doc. 46-1, Doc. 46-5).

Banks underwent radical cystectomy at Good Samaritan Hospital in Mt. Vernon, Illinois on July 18, 2017. *Id*. During this hospitalization, he developed complications related to the surgical procedure – bowel ischemia, sepsis, and multisystem organ failure – and died on August 7, 2017. *Id*.

**Discussion**

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party is entitled to summary judgment where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Under the Federal Torts Claims Act ("FTCA"), the United States is liable for personal injuries caused by the negligent or wrongful acts of federal employees acting within the scope of their employment "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1346(b)(1). In lawsuits brought under the FTCA, the district court applies the law of the state in which the acts or omissions occurred. 28 U.S.C. § 1346(b)(1). The alleged negligent acts in this case occurred at the Marion VA located in Marion, Illinois. Thus, Illinois law governs this matter.

Under Illinois law, a plaintiff must establish the following elements to prevail in a medical malpractice action: (1) the standard of care in the medical community by which the physician's treatment was measured; (2) that the physician deviated from the standard of care; and (3) that a resulting injury was proximately caused by the deviation from the standard of care. *See Massey v. United States*, 312 F.3d 272, 280 (7th Cir. 2002). With respect to the applicable standard of care, physicians have a duty "to exercise the same degree of knowledge, skill, and care which a

reasonably well qualified physician in the same or similar community would use under similar circumstances." *Jinkins v. Lee,* 807 N.E.2d 411, 421 (2004). Although the question of breach is normally a question of fact for the jury, the court may grant summary judgment for the plaintiff if the breach is obvious from the undisputed facts. *Gipson v. United States,* 631 F.3d 448, 452 (7th Cir. 2011).

Here, Plaintiff asserts the United States committed medical malpractice on five separate occasions: July 2, 2014; November 4, 2014; January 20, 2015; June 23, 2015; and August 25, 2015. Relying on Declarations from retained experts, Plaintiff argues the undisputed evidence clearly establishes that had Banks received the proper course of treatment on those dates, it is more probably true than not true that he would have survived and been able to keep a functioning bladder. The United States argues that Plaintiff's motion should be denied because there are genuine issues of material fact regarding causation. Specifically, the United States points out that there is a dispute with respect to the interpretation of three CT scans relied upon by Plaintiff's experts in formulating their opinions. The United States also maintains that material factual issues exist related to Banks' culpability, making summary judgment inappropriate. The Court agrees.

According to Plaintiff's expert, Dr. Marc Glickstein, a CT scan performed on January 15, 2015 revealed the presence of a mass in Banks' bladder measuring 18 mm wide x 12 mm anterior/posterior; a CT scan performed on March 7, 2015 showed no growth in the mass; by January 21, 2016, the CT scan revealed a mass measuring 28 mm wide x 28 mm anterior/posterior (Doc. 49-1 at 2-3; Doc. 28 at 17-18). Plaintiff's retained oncologist and urologist incorporate Dr. Glickstein's interpretations in their discussions of the retrospective staging of Banks' bladder cancer to offer their opinions on when treatment options changed. Dr. George Ansstas, Plaintiff's retained oncologist, opines the CT scans indicate that Banks' cancer had progressed to Stage 2 in

light of the growth of the mass (Doc. 49-2 at 9).  Dr. Ansstas further opines that Banks would have had a greater chance of a successful outcome if the bladder tumor had been treated before it progressed to stage 2.  *Id*.

The United States' retained radiology expert, Dr. Scott Berger, disputes Dr. Glickstein's interpretations.  According to Dr. Berger, the scans did not clearly visualize the presence of a bladder mass and Dr. Glickstein's opinion to the contrary is not consistent with sound radiological practice.  At the summary judgment stage, it is not for this Court to judge the credibility of expert opinions; this "battle of the experts" creates a genuine issue of material fact regarding causation that cannot be resolved on summary judgment.  *Chamberlain Grp., Inc. v. Lear Corp.,* 756 F.Supp.2d 938, 951 (N.D. Ill. 2010).

Likewise, there are material issues of fact as to whether Dr. Palagiri breached the standard of care.  Plaintiff's retained urologist, Dr. Edward Yun, opines that Dr. Palagiri breached the standard of care on November 4, 2014 by failing to perform or schedule a cystoscopy given Banks' prior episodes of hematuria. Dr. Palagiri testified about his thought process in ordering the consultation instead of performing a cystoscopy, and the United States argues that his decision to refer Banks to the John Cochran VA facility for a second opinion did not breach the standard of care considering Banks' multiple conditions and the need to sequence tests.  Again, these are genuine factual disputes precluding summary judgment.

Whether Banks was contributorily negligent is also in dispute.  The United States contends that Banks' conduct of cancelling and failing to appear for urological appointments caused a delay in properly diagnosing his cancer. To resolve the issue of contributory negligence, a court must apply an objective reasonable-person standard that asks, "whether plaintiff ... used that degree of care which an ordinarily careful person would have used ... under

like circumstances." *Clanton v. United States*, 943 F.3d 319, 323 (7th Cir. 2019), *reh'g denied* (Jan. 3, 2020) quoting *McCarthy v. Kunicki*, 823 N.E.2d 1088, 1101 (2005).  As the United States correctly notes, "[i]n a medical malpractice action, a comparative negligence instruction is appropriate if a party presents a theory of the case in which the patient's negligence precedes or is contemporaneous with the physician's malpractice; for example, when a patient delays in seeking treatment for his or her medical condition or injury." *Krklus,* 359 Ill. App. 3d at 480, 833 N.E.2d at 960.

Plaintiff's experts' Declarations do not address Banks' failure to appear for his scheduled urology appointments and whether those failures impact the standard of care or causation. As such, whether Banks was contributorily negligent presents a question of fact that is not suited for summary judgment.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Doc. 49) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  January 29, 2021**

**STACI M. YANDLE**
**United States District Judge**